IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ORGANOGENESIS INC., a corporation | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:24-CV-00006-Z |
| RUSSELL MELCHER | § § § | |
| Defendant. | § § | |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant Russell Melcher ("Defendant" or "Melcher"), by and through his attorney, hereby files this Brief in Support of his Motion for Partial Summary Judgment requesting that the Court grant Defendant summary judgment on Plaintiff's breach of contract claims, and respectfully shows this Court as follows:

**I.   INTRODUCTION**

1.   Organogenesis hired Melcher as a salesman in West Texas and had him sign a noncompete agreement ("NCA") (ECF 1-1). Even though Melcher's sales territory was limited to West Texas, the NCA covered the entire United States, Canada, Western Europe, and Japan—parts of the world in which Melcher never worked (or even contemplated working). Accordingly, the NCA is unenforceable under Texas law because it is geographically far too broad. Even were the Court to apply Massachusetts law, the NCA

1

is unenforceable under that state's "material change" doctrine because Organogenesis did not negotiate a new NCA when Melcher received a promotion in 2021.

## II.     FACTS

2.      Russell Melcher is a former employee of Organogenesis, a company that specializes in regenerative medical products. (ECF 1, Compl. ¶¶ 2-3.) In 2014, Organogenesis hired Melcher as a Tissue Regeneration Specialist ("TRS"), whose job was to market and sell Organogenesis wound care products in the West Texas territory, which included the cities of Lubbock, Amarillo, Midland, Odessa, Abilene, San Angelo, and Big Spring. (*Id.* ¶¶ 3-4).

3.      Melcher was promoted to Senior Tissue Regeneration Specialist for the same territory in March 2019.  (*Id.* ¶ 36; APPX. 1-3, 11 — Affidavit of Russell Melcher). In March 2021, he was again promoted, this time to Regional Sales Manager, and his base salary increased 25%--from $104,901.16 to $135,000.06. (*See* APPX. 1-3, 12).  As a result, Melcher was assigned management duties for the West Texas sales territory and management assistance duties for the El Paso and San Antonio, Texas territories.  *Id*.

4.      Shortly after going to work for Organogenesis in 2014, Melcher signed a document entitled, "Invention, Non-Disclosure and Non-Competition Agreement (the Agreement)." ((ECF 1, Compl. ¶ 29; ECF 1-1, APPX. 6-10). The Agreement purported to prohibit Melcher from participating in any business which is competitive with Organogenesis's business, both during his employment and for two years thereafter. (*See* ECF 1-1 – NCA ¶ 2).  Specifically, the Agreement states:

2

> Employee . . . will not participate **within the United States, Canada, Western Europe or Japan** as an owner, stockholder, option holder, manager, agent, consultant, director, lender of money, guarantor, salesperson or employee of any other business, firm or corporation which is, or by the action of Employee would become, competitive with the Business of the Company nor attempt to interfere with or entice away any customer, licensee or employee or consultant of the Company.

(ECF 1-1 – NCA ¶ 2). (emphasis added). Organogenesis alleged that Melcher violated the NCA and fired him in January 2024. But the NCA covers a large portion of the globe where Melcher never did any work for Organogenesis. (*See* APPX. 1-3 —Affidavit of Russell Melcher.) In fact, Melcher was never assigned to sell Organogenesis products outside the State of Texas. *Id.* Additionally, Organogenesis never renegotiated the NCA with Melcher after he promoted and took on more responsibilities. *Id.*

### III.   STANDARD OF REVIEW

5. Summary judgment is warranted when a party establishes there is no genuine dispute about any material fact and the law entitles the party to judgment. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact in its motion. *Celotex*, 477 U.S. at 323. When the movant so demonstrates, "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

6. The non-movant may not rest upon allegations in the pleading but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. Mere conclusory allegations are not competent summary judgment evidence and are insufficient to defeat a summary judgment motion. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.

1996). Similarly, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). No genuine issue of material fact exists if the summary judgment evidence is such that no reasonable juror could find in favor of the non-movant. *Jenkins v. Methodist Hospitals of Dallas*, 478 F.3d 255, 260 (5th Cir. 2007).

## IV.   ARGUMENT AND AUTHORITIES

### A. Texas law determines the enforceability of the non-compete agreement.

7.   In a diversity case, the interpretation of a contract is controlled by state law. *First Baptist Church of Iowa, Louisiana v. Church Mut. Ins. Co.*, S.I., 105 F.4th 775 (5th Cir. 2024). The NCA purports to invoke Massachusetts law, (ECF 1-1—NCA ¶ 11), but the Court should follow Fifth Circuit and Texas Supreme Court precedent and apply Texas law to construe the NCA.

8.   The forum state of Texas provides the law that governs the choice-of-law analysis. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). Texas law recognizes the "party autonomy rule" that parties can agree to be governed by the law of another state. *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 532 (5th Cir. 2020) (citing *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014)). As laid out by the Texas Supreme Court in *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990), Texas applies the framework set forth in Section 187 of the Restatement (Second) of Conflict of Laws in determining the enforceability of a contractual choice-of-law provision. *Id.* at 677-78.

9.   Section 187 provides, in pertinent part:

The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id*. There is likely a reasonable basis for the parties' choice of Massachusetts law because Organogenesis' principal place of business is in Massachusetts. *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015) (holding that when one party was headquartered in a certain state, a reasonable basis existed for choosing that state's law). However, because this case falls within the exception of Section 187(2)(b), Texas law should apply.

10. Texas courts consider the factors under subsection (b) "in reverse order." *Cardoni*, 805 F.3d at 582. Specifically, courts next determine (1) whether Texas has a more significant relationship with the parties and the transaction at issue than Massachusetts does under Restatement § 188; (2) whether Texas has a materially greater interest than Massachusetts in the enforceability of the NCA; and (3) whether application of Massachusetts law would be contrary to a fundamental policy of Texas. *Id*. All of these factors are present here, so the Court should apply Texas law.

11. The Fifth Circuit, in *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 533 (5th Cir. 2020), analyzed a similar NCA. It first observed that the "more significant relationship" determination is made by examining various contacts, including the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, place of incorporation, and place of

business of the parties. *Id.* In *Jongebloed*, the Fifth Circuit held that Texas had the more significant relationship because the employee was hired to work at a subsidiary of the employer that served the Houston area; the subsidiary had multiple offices throughout Houston and employed 280 employees; the employee was a Texas resident; she agreed to the NCA in Texas; and the NCA prohibited her from working within a certain area in Texas. *Id.* The only connection to the other state was that it was the employer's place of incorporation. *Id.* The Fifth Circuit concluded that Texas had a more significant relationship with the parties and the transaction. *Id.*

12.  Here, Texas has a more significant relationship with the parties and the transaction than does Massachusetts because Melcher is a Texas resident, he was hired to work in Texas, he marketed and sold products in Texas, he signed the NCA in Texas, and the NCA ostensibly applies to him in Texas. (*See* APPX 1-13—Affidavit of Russell Melcher.) The only connection to Massachusetts is that Organogenesis' principal place of business is in Massachusetts. This factor weighs in favor of applying Texas law.

13.  Next, Texas has a "materially greater interest" in the enforceability of the NCA than does Massachusetts. In *Jongebloed*, 957 F.3d at 533, the Fifth Circuit considered the fact that Texas was directly interested in the defendant-employee as an employee working within its state borders. *Id.* at 534. Texas was also interested in the employer as a national employer doing business in Texas, as well as its competition in the state. *Id.* Finally, the court considered Texas's interest in consumers of the services furnished in Texas by the employer and performed by the employee. *Id.* The court discounted the other

6

state's interest in protecting a national business. *Id.* On balance, the Fifth Circuit held that Texas had a materially greater interest in the enforceability of the NCA. *Id.*

14. Many of the pertinent facts in *Jongebloed* are the same here. Texas has a materially greater interest in the enforceability of the NCA than Massachusetts because Melcher worked in Texas, Melcher did business in Texas, and Melcher sold—and Texas residents purchased—Organogenesis products in Texas. (*See* APPX 1-13—Affidavit of Russell Melcher.) Here, similar to *Jongebloed*, Texas has a "materially greater interest" in the enforceability of the NCA than does Massachusetts.

15. Finally, the application of Massachusetts law to decide the enforceability of the NCA would contravene a fundamental policy of Texas. *Id.* As the Texas Supreme Court has held, "the law governing enforcement of noncompetition agreements is fundamental policy in Texas, and that to apply the law of another state to determine the enforceability of such an agreement in the circumstances of a case like this would be contrary to that policy." *Jongebloed*, 957 F.3d at 534 (quoting *DeSantis*, 793 S.W.2d at 681); *see also Cardoni*, 805 F.3d at 585-86 (noting that "fundamental policy" is an elusive concept and applying Oklahoma over Texas law). The court went on to note that, while Texas law requires an NCA to be ancillary to or part of an otherwise enforceable agreement, the other state law had no such requirement and even allowed continued employment to serve as consideration for an at-will employee's agreement to an NCA—which Texas does not allow. *Id.* For these reasons, the Fifth Circuit held that the other state's law could be contrary to fundamental policy in Texas regarding the enforceability of NCA. *Id.* Therefore, after balancing the above factors, the court held that Texas law applied. *Id.* The

Court should do the same here and hold that Texas law governs the inquiry into whether the NCA is enforceable.

### B. The NCA is geographically overbroad and, therefore, is unreasonable.

### iii. An overbroad NCA is unreasonable.

16. The enforceability of a covenant not to compete is a question of law for the court. *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 584 (5th Cir. 2015) (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex.2009)). In Texas, "[e]very contract . . . in restraint of trade or commerce is unlawful." Tex. Bus. & Com. Code § 15.05(a). "An agreement not to compete is in restraint of trade and therefore unenforceable . . . unless it is reasonable." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990). By statute, covenants not to compete are reasonable—and therefore enforceable—only to the extent that they contain "limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code § 15.50(a). If a court finds that a covenant is unreasonable, it must reform the covenant to render it reasonable. Tex. Bus. & Com. Code § 15.51(c).

17. Texas courts typically invalidate noncompete agreements not limited to an employee's former customers when the employee's value derived in large part from his customer relationships. *See Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 298 (Tex. App.—Beaumont 2004, no pet.) ("[A] covenant not to compete that extends to clients with whom a salesman had no dealings during his employment is unenforceable.") (citing *Peat*

8

*Marwik Main & Co. v. Haass*, 818 S.W.2d 381, 386–88 (Tex. 1991); *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ("In the case of covenants applied to a personal services occupation, such as that of a salesman, a restraint on client solicitation is overbroad and unreasonable when it extends to clients with whom the employee had no dealings during his employment."); *see also M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 799 (S.D. Tex. 2010) ("Texas courts are generally concerned about customer contract restrictions where the client base is the protectable business interest.")).

### iv. Organogenesis's NCA is geographically overbroad.

16. The NCA here is geographically overbroad. It purports to restrict Melcher's activities across "the United States, Canada, Western Europe, [and] Japan." (ECF 1-1—NCA ¶2.) But the parties agree that Melcher worked primarily in the West Texas Territory and was never assigned to sell Organogenesis products outside of the State of Texas. (ECF 1, Compl. ¶ 4; APPX 1-13—Affidavit of Russell Melcher.)

17. The breadth of enforcement of territorial restraints in NCA's depends on the nature and extent of the employer's business and the degree of the employee's involvement. *Allan J. Richardson & Assocs., Inc. v. Andrews,* 718 S.W.2d 833, 835 (Tex. App.—Houston [14th Dist.] 1986, no writ). The NCA must bear some relationship to the activities of the employee; if it is overbroad, the court may reform its terms to make them reasonable. *Id.* Generally, a reasonable area for purposes of a NCA is considered to be the territory in which the employee worked while in the employment of his employer. *Curtis v. Ziff Energy Group, Ltd.,* 12 S.W.3d 114, 119 (Tex. App.—Houston [14th Dist.] 1999,

9

no pet.); *Evan's World Travel, Inc. v. Adams,* 978 S.W.2d 225, 232–33 (Tex. App.—Texarkana 1998, no pet.).

18. Here, Melcher's sales territory included cities in West Texas. (See ECF 1, Compl. ¶ 4; APPX 1-13—Affidavit of Russell Melcher.)) But the NCA covers the United States, Canada, Western Europe, and Japan. (ECF 1-1, NCA ¶2.) The NCA is overbroad because it covers many states, countries, and even parts of a continent where Melcher never did anything for Organogenesis. (ECF 1-1, NCA ¶2; APPX 1-13—Affidavit of Russell Melcher.)

19. Notably, as recently as 2016, Organogenesis conceded that the identical NCA language was geographically overbroad. *Organogenesis Inc. v. Ness*, No. 216CV00989GMNCWH, 2016 LEXIS 68028, at *11 (D. Nev. May 23, 2016). In the *Ness* case, filed in federal district court in Nevada, Organogenesis sued a former employee—another Tissue Regeneration Specialist like Melcher—who allegedly violated her NCA by approaching Organogenesis clients in Nevada, her former sales territory. Id. at *2-4. Just like Melcher, this salesperson's NCA covered "the United States, Canada, Western Europe, [and] Japan." *Id*. at *2.

20. In response to a geographic overbreadth challenge, Organogenesis conceded that the NCA was geographically overbroad and that only the salesperson's former sales territory should be covered under the NCA. *Id.* at *11-12. The court acknowledged Organogenesis's concession that the NCA was geographically overbroad and reformed the NCA to the employee's former sales territory. *Id.*

### *iii. The NCA must be reformed and money damages disallowed.*

21. Section 15.51 of the Texas Business & Commerce Code requires a court to reform a NCA if it is unreasonably broad in scope. Tex. Bus. & Com. Code § 15.51(c) ("If the covenant is found to be ancillary to or part of an otherwise enforceable agreement but contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable . . . the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant . . . to be reasonable and to impose a restraint that is not great than necessary to protect the goodwill or other business interest of the promise and enforce the covenant as reformed.").

22. If the Court reforms the agreement, "the court may not award the promisee damages for a breach of the covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief." Tex. Bus. & Com. Code § 15.51(c). "Under Texas law, 'the procedures and remedies in an action to enforce a covenant not to compete provided by Section 15.51of [the Texas Business and Commerce Code] are exclusive and preempt any other criteria for enforceability of a covenant not to compete or procedures and remedies in an action to enforce a covenant not to compete under common law or otherwise." *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 620-21 (S.D. Tex. 2011) (citing Tex. Bus. & Com. Code § 15.52). "Under this provision, remedies for breach of a covenant note to compete are limited to the remedies available under § 15.51(c)." *Id*.

23. Therefore, because the NCA here should be reformed, Organogenesis can seek relief only under Section 15.51(c). "That section precludes damages for violation of a clause that had to be reformed to be enforceable. This limit applies to damages for breaches

11

that occurred before or after reformation." *Alliantgroup*, 803 F. Supp. 2d at 621 (citations omitted). Thus, any relief afforded to Organogenesis on its claim for breach of the NCA must be limited to injunctive relief only.

   *iv.* *Organogenesis should be ordered to pay costs and attorney's fees.*

  24. Under Tex. Bus. & Com. Code § 15.51(c), the Court should award Melcher the costs, including attorney's fees, he has incurred defending Organogenesis's action attempting to enforce the overbroad NCA. Melcher's contract with Organogenesis was to render personal services (i.e., sales), As is evidenced by its concession in the *Ness* case, Organogenesis knew that the NCA was geographically overbroad, yet Organogenesis brought this suit to enforce it anyway. Therefore, the Court has the authority to order Organogenesis to pay Melcher's costs, including attorney's fees, he's been forced to incur defending this action.[1]

  **C. Alternatively, the NCA is unenforceable under Massachusetts law.**

  25. Even if Massachusetts law were to apply, the Court should hold the NCA unenforceable under Massachusetts' "material change" doctrine. "Under [Massachusetts'] 'material change' doctrine, a 'non-solicitation agreement or covenant not to compete may be deemed void if there are material changes in the employment relationship between an employee and the employer.'" *NuVasive, Inc. v. Day*, 954 F.3d 439, 444 (1st Cir. 2020) (quoting *Patriot Energy Grp., Inc. v. Kiley*, No. SUCV2013-04177, 2014 Mass. Super. LEXIS 25 at *19 (Mass. Super. Ct. Feb. 26, 2014)). In other words, "[e]ach time

---

[1] Should the Court grant this Motion, Melcher will file an appropriate motion, with supporting evidence, seeking an award of attorney's fees.

an employee's employment relationship with the employer changes materially such that they have entered into a new employment relationship[,] a new restrictive covenant must be signed." *Dodge v. Mevion Med. Sys., Inc.*, 575 F. Supp. 3d 236, 241 (D. Mass. 2021) (citing *Lycos v. Jackson*, 2004 Mass. Super. LEXIS 348, at *3 (Mass. Super. Ct. Aug. 25, 2004)) "Changes such as a promotion to a new position, an increase in salary or a conferral of additional responsibilities can be evidence of a material change in the employment relationship." *Id*. (citing *Lycos v. Jackson*, No. 20043009, 2004 Mass. Super. LEXIS 348, at *3 (Mass. Super. Ct. Aug. 25, 2004)).

26. Melcher was promoted to a Senior Tissue Regeneration Specialist for the West Texas territory in March 2019. (ECF 1, Compl. ¶36; APPX 11.) In March 2021, Melcher was promoted to Regional Sales Manager. (*See* APPX 1-3, 12—Affidavit of Russell Melcher.) As a result, he was assigned management duties for his sales territory in West Texas and management assistance duties for the El Paso and San Antonio, Texas territories. *Id.* From April to December of 2021, Melcher performed both his role as the Regional Sales Manager and his role of Senior Tissue Regeneration Specialist for the West Texas territory. *Id.* While serving as Regional Sales Manager, Organogenesis increased Melcher's base salary by 25%--from approximately $104,901.16 to $135,000. *Id.* At no time did Organogenesis renegotiate the NCA with Melcher. *Id.*

27. Under Massachusetts material change doctrine, Organogenesis and Melcher should have signed a new NCA. All of the factors Massachusetts courts consider as evidence of a material change in an employment relationship were present here: promotion to a new position, an increase in salary, and a conferral of additional responsibilities.

*Dodge*, 575 F. Supp. 3d at 241 (citing *Lycos*, 2004 Mass. Super. LEXIS 348, at *3). Melcher was promoted to a new position as Regional Sales Manager, received a 25% salary increase, and took on additional responsibilities. The terms of Melcher's employment with Organogenesis changed materially, so Organogenesis should have renegotiated the terms of the NCA with Melcher. Because it did not, the NCA should be deemed void. *See NuVasive*, 954 F.3d at 444.

## CONCLUSION

For these reasons, Defendant's Motion for Partial Summary Judgment should be granted.

Respectfully submitted,

YOUNG FIRM, PC
By: /s/ Jeremi K. YounG
Jeremi K. Young, TX SBN 24013793
905 Fillmore, Suite 101
Amarillo, Texas 79101
Tel: (806) 331-1800
Fax: (806) 398-9095
jyoung@youngfirm.com

**COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that, on the 25th day of September, 2024, the foregoing document was electronically transmitted to the Clerk of the Court for filing via the Court's ECF System, and service of Notice of Electronic Filing was made to the ECF registrants shown below:

Richard Biggs
Mullin Hoard & Brown, LLP
500 South Taylor, Suite 800, LB 213
P.O. Box 31656
Amarillo, Texas 79120-1656
E-mail: rbiggs@mhba.com

Michael Rosen
Leah S. Rizkallah
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210-2699
Email: mrosen@foleyhoag.com
lrizkallah@foleyhoag.com

COUNSEL FOR PLAINTIFF

By: /s/ Jeremi K. Young<br>Jeremi K. Young