# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

ORGANOGENESIS INC., a corporation,

                Plaintiff,

    v.

RUSSELL MELCHER,

                Defendant.

Civil Action No. 2:24-CV-006-Z-BR

**PLAINTIFF'S LIMITED OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

Background ........................................................................................................................1

    I.       Organogenesis' Business. ............................................................................................1

    II.      Organogenesis Hires Melcher as a Tissue Regeneration Specialist. .............................2

    III.    Melcher "Moonlights" for Organogenesis' Competitors in the West Texas Territory. ..4

    IV.    Organogenesis Terminates Melcher and Initiates this Lawsuit. ....................................5

Argument ...........................................................................................................................6

    I.       Summary Judgment Standard. ......................................................................................6

    II.      The Texas Covenants Not to Compete Act...................................................................6

    III.    Organogenesis Does Not Contest that the Non-Competition Provision's Geographical Scope is Unenforceable under Texas Law. ............................................6

    IV.    Texas Law Requires that the Geographical Scope of the Non-Competition Provision be Reformed......................................................................................................................7

    V.      Melcher's Request for Attorneys' Fees Should be Denied..........................................7

Conclusion .......................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cory v. Stewart*,
   103 F.4th 1067 (5th Cir. 2024) ...................................................................................................6

*Curtis v. Ziff Energy Group, Ltd.*,
   12 S.W.3d 114 (Tex. App. 1999) .................................................................................................7

*GE Betz, Inc. v. Moffitt-Johnston*,
   885 F.3d 318 (5th Cir. 2018) ...................................................................................................8, 9

*Ginn v. NCI Bldg. Sys.*,
   472 S.W.3d 802 (Tex. App. 2015) ...............................................................................................8

*Hunn v. Dan Wilson Homes, Inc.*,
   789 F.3d 573 (5th Cir. 2015) .......................................................................................................6

*M-I LLC v. Stelly*,
   733 F. Supp. 2d 759 (S.D. Tex. 2010) .........................................................................................7

*Organogenesis, Inc. v. Ness*,
   2016 U.S. Dist. LEXIS 68028 (D. Nev. May 23, 2016) ..........................................................8, 9

*SafeWorks, LLC v. Max Access, Inc.*,
   2009 U.S. Dist. LEXIS 29268 (S.D. Tex. Apr. 8, 2009) ..............................................................9

*Vais Arms, Inc. v. Vais*,
   383 F.3d 287 (5th Cir. 2004) .......................................................................................................7

*Weber Aircraft, L.L.C. v. Krishnamurthy*,
   2014 U.S. Dist. LEXIS 182850 (E.D. Tex. Dec. 11, 2014) .........................................................9

*Wright v. Sport Supply Group, Inc.*,
   137 S.W.3d 289 (Tex. App. 2004) ..........................................................................................6, 7

**Statutes**

Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ................................................................1, 5

Texas Covenants Not to Compete Act, Tex. Bus. & Com. Code Ann. § 15.51(c) ............7, 8, 9, 10

Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A .................................1, 5

Plaintiff Organogenesis Inc. ("Organogenesis" or the "Company") initiated this civil action against former employee Defendant Russell Melcher ("Melcher") following Melcher's duplicitous scheme to utilize Organogenesis' trade secrets and other confidential information to enrich himself and Organogenesis' direct competitors, all while he remained employed by Organogenesis. In addition to a claim that Melcher breached the non-competition provisions he agreed to at the outset of his employment, Organogenesis brought claims against Melcher for breaching his agreement to refrain from using the Company's confidential information for his own personal benefit; violating the Texas Uniform Trade Secrets Act; violating the Defend Trade Secrets Act of 2016; tortious interference with business relations; and breach of the duty of loyalty. Melcher now moves for partial summary judgment only as to Count I – breach of his non-competition agreement – on the grounds that the agreement is unenforceable. While discovery remains ongoing in this matter, Organogenesis concedes that the geographic scope of the non-competition agreement, as drafted, is overbroad under Texas law. Nevertheless, pursuant to the Texas Covenants Not to Compete Act, Organogenesis respectfully requests that the Court reform the geographic scope of the non-competition agreement such that it is enforceable under Texas law. Moreover, Melcher's request for attorneys' fees is an untenable overreach, as he has not established any of the prerequisites required for an attorneys' fees award under the Texas Covenants Not to Compete Act, and therefore the Court should deny that aspect of his Motion.

## BACKGROUND

### I. Organogenesis' Business.

Organogenesis develops, manufactures, and sells regenerative products for advanced wound care and surgical and sports medicine. Appendix to Plaintiff's Opposition to Defendant's Motion for Summary Judgment [Dkt. No. 66] ("Pfs Appx") at 1. It sells its products throughout the United States, Canada, Europe, and Japan, and employs sales representatives in each of its

1

sales territories. *Id.* Those sales representatives, or Tissue Regeneration Specialists, liaise with medical professionals, market the Company's products, and serve as the face of the Company in their respective territories. *Id.* at 1-2.

To that end, the Company invests significant resources in training its Tissue Regeneration Specialists. Organogenesis provides them with multiple phases of training, with each phase incorporating at-home and field training. *Id.* at 2. The Company provides them with rigorous home study materials and accompanying assessments that cover topics ranging from the types of conditions that Organogenesis' products treat to key features that differentiate those products from other products in the market. *Id.* Organogenesis also provides training on sales techniques, marketing, reimbursement, and compliance. *Id.* Additionally, the Company provides its Tissue Regeneration Specialists with access to confidential information concerning customer accounts and market intelligence, including but not limited to customer preferences, purchase histories and patterns, competitive product utilization practice patterns, and purchase power. *Id.*

### II.   Organogenesis Hires Melcher as a Tissue Regeneration Specialist.

Organogenesis hired Melcher as a Tissue Regeneration Specialist on or about August 4, 2014. Appendix to Defendant's Motion for Partial Summary Judgment [Dkt. No. 58] ("Dfs Appx") at 1, 4. In that capacity, Melcher was responsible for the Company's West Texas sales territory, encompassing the cities of Lubbock, Amarillo, Midland, Odessa, Abilene, San Angelo, and Big Spring (the "West Texas Territory"). *Id.* at 2. As a condition of employment, Melcher executed that certain Invention, Non-Disclosure and Non-Competition Agreement on or about July 6, 2014 (the "Agreement"). *Id.* at 2, 6-10.

The Agreement contains a non-competition provision that is the subject of this Motion.

> In consideration of the remuneration to be received by [Melcher] from the Company, [Melcher] agrees for the term of his or her association with the

> Company and a period of two years thereafter … he [] will not participate within the United States, Canada, Western Europe or Japan as a[] … salesperson or employee of any other business … which is, or by the action of [Melcher] would become, competitive with the Business of the Company nor attempt to interfere with or entice away any customer … of the Company.

*Id.* at 7.  The Agreement also prohibits Melcher from –

> disclos[ing], publicly or privately, to anyone outside of the Company or use directly or indirectly for [his] own benefit, during the period of his or her association with the Company, or any time thereafter … any trade secret or confidential report or other confidential information, technical or engineering bill or materials, specification, drawing, protocol, process, procedure or data, method of production, scale up approach, software listing or binary code, investment or funding strategy, investor, prospect or customer list or employee compensation schedule [] relating to the Business of the Company of any of its prospects, customers, licensees or suppliers ….

*Id.* at 8-9.  Melcher agreed that the foregoing provisions, in addition to other provisions in the Agreement, "including without limitation the scope and geographic range of his [] obligations, are reasonable and that he [] will not contest the same for any reason." *Id.* at 9.  He further "recognize[d] that any breach of this Agreement by him [] is likely to result in irreparable injury to the Company and agree[d] that the Company shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction … to obtain money damages for any breach of this Agreement." *Id.* at 9.[1]

The Agreement also provides:

> [I]n the event that any portion of this Agreement shall be determined by any court [of] competent jurisdiction to be unenforceable by reason of its extending for too great a period of time or over too large a geographic area or over too great a range of activities, [Melcher] agrees that all other portions of this Agreement shall be enforceable with respect to the period

---

[1] Notwithstanding these agreements, Melcher challenges the geographic scope of the Agreement's non-competition provisions and seeks an order precluding Organogenesis from collecting damages for Melcher's breach thereof in this Motion.

3

>> of time, geographic area or range of activities as to which they are enforceable.

*Id.* Finally, the Agreement contains a Massachusetts choice of law provision. *Id.* at 10.

During the entirety of his employment with Organogenesis, Melcher received an annual salary and was eligible to receive incentive bonuses and commissions. Pfs Appx at 2. In connection with his employment, the Company provided Melcher with access to confidential information regarding the Company's customers and prospective customers in the West Texas Territory and related market intelligence, including but not limited to customer preferences, purchase histories and patterns, competitive product utilization, practice patterns, and purchase power. *Id*.

### III.    Melcher "Moonlights" for Organogenesis' Competitors in the West Texas Territory.

In 2021, the West Texas Territory generated over $11.5 million of revenue, much of which was driven by three accounts – Dr. Timothy Bumann, Dr. Roger Wolcott, and Carenomics – accounting for approximately $10.8 million of revenue in the aggregate in 2021. Pfs Appx at 3. In 2022, the West Texas Territory's sales decreased by more than 50% to $5.5 million. *Id*. And in 2023, the West Texas Territory's sales decreased again by over 20% to $4.2 million. *Id*. Between 2021 and 2023, Organogenesis lost approximately $7.3 million in revenue from Melcher's sales territory, representing about $5.8 million in lost profits. *Id*.

Unbeknownst to Organogenesis, the precipitous decrease in sales revenue from the West Texas Territory was a result of Melcher siphoning off customers from Organogenesis for his own benefit and the benefit of the Company's direct competitors. *See id.* at 5-27. In particular, Melcher worked with Rogue Medical and Michelle Lerma, a former Organogenesis sales representative, to target Organogenesis' customers and divert them to Rogue Medical using the Company's very own confidential information. Organogenesis only learned about Melcher's scheme when several

4

of his customers inadvertently copied Melcher's Organogenesis' e-mail address on correspondence with Rogue Medical and Tides Medical. *See id.*

### IV. Organogenesis Terminates Melcher and Initiates this Lawsuit.

On or about January 5, 2024, Organogenesis terminated Melcher's employment and filed this lawsuit. Complaint [Dkt. No. 1] ("Compl." or the "Complaint"). In this action, Organogenesis brings six Counts against Melcher, all of which arise from his scheme to divert customers away from Organogenesis to its direct competitors: (i) breach of contract for violating the non-competition provision of the Agreement, Compl. at ¶¶ 69-73 (Count I); (ii) breach of contract for violating the Agreement's prohibition from using the Company's trade secrets and confidential information for Melcher's own personal benefit, *id.* at ¶¶ 74-78 (Count II); (iii) misappropriation of trade secrets in violation of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A, *id.* at ¶¶ 79-90 (Count III); misappropriation of trade secrets in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *id.* at ¶¶ 91-103 (Count IV); (v) tortious interference with business relations, *id.* at ¶¶ 104-108 (Count V); and (vi) breach of the duty of loyalty, *id.* at ¶¶ 109-115 (Count VI).

Melcher now moves for partial summary judgment on Count I, arguing that the Agreement's non-competition provision is unenforceable under Texas law on the grounds that the geographic scope of the provision is overbroad. *See generally* Defendant's Brief in Support of its Motion for Partial Summary Judgment [Dkt. No. 57] ("Dfs Br.").[2] For the reasons set forth herein, Melcher's motion must be denied.

---

[2] Melcher moves for partial summary judgment as to Organogenesis' "claims for breach of contract." Defendant's Motion for Partial Summary Judgment [Dkt. No. 56]. Organogenesis has brought two breach of contract Counts against Melcher – Counts I and II. *See* Compl. at ¶¶ 69-78. But Melcher has made no argument as to why he is entitled to summary judgment on Count II, which alleges breach of contract based on Melcher's use of the Company's trade secrets and

5

<u>ARGUMENT</u>

**I.      Summary Judgment Standard.**

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Cory v. Stewart*, 103 F.4th 1067, 1072-73 (5th Cir. 2024) (quoting Fed. R. Civ. P. 56(a)).  Factual controversies must be resolved in favor of Organogenesis.  *Id.* at 1073 n.8.

**II.     The Texas Covenants Not to Compete Act.**

"The enforceability of a covenant not to compete is a question of law[.]" *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 584 (5th Cir. 2015) (quoting *Mann v. Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)).  "A covenant not to compete is enforceable if it (1) is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made and (2) contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the [employer]." *Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 294-95 (Tex. App. 2004) (citing Tex. Bus. & Com. Code Ann. § 15.50(a)).

The sole basis for which Melcher argues that the Agreement's non-competition provision is unenforceable under Texas law is that its geographic scope is overbroad.  *See generally* Dfs Br.

**III.    Organogenesis Does Not Contest that the Non-Competition Provision's Geographical Scope is Unenforceable under Texas Law.**

---

confidential information for his own benefit.  Accordingly, Organogenesis does not address Count II in this Opposition.  To the extent Melcher is seeking summary judgment on Count II, the Motion must be denied on the ground that he has failed to show that he is entitled to summary judgment on that Count.

For purposes of this Motion, Organogenesis does not contest that Texas law applies to the Agreement. Nor does Organogenesis contest that the Agreement's non-competition provision is geographically overbroad under Texas law.

### IV. Texas Law Requires that the Geographical Scope of the Non-Competition Provision be Reformed.

"[S]ection 15.51(c) requires the court to reform a covenant that it finds unreasonable as to time, geographical area, or scope of activity." *Wright*, 137 S.W.3d at 299 (citing Tex. Bus. & Com. Code Ann. § 15.51(c)). Melcher agrees. *See* Dfs Br. at 8 (acknowledging that the Court "must reform the covenant to render it reasonable") (citations omitted) (emphasis added).

"A reasonable geographic scope is generally considered to be the territory in which the employee worked for the employer." *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 797 (S.D. Tex. 2010) (citing *Zep. Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 660 (Tex. App. 1992)) (citations and other quotations omitted); *see also Vais Arms, Inc. v. Vais*, 383 F.3d 287, 295 (5th Cir. 2004); *Curtis v. Ziff Energy Group, Ltd.*, 12 S.W.3d 114, 119 (Tex. App. 1999). There is no dispute that Melcher worked in the West Texas Territory throughout the duration of his employment with the Company. Accordingly, Organogenesis respectfully requests that the Court reform the scope of the non-competition provision in the Agreement to the West Texas Territory.

Because the Court must reform the geographic scope of the Agreement's non-competition provision, pursuant to Tex. Bus. & Com. Code § 15.51(c), Organogenesis acknowledges that it cannot pursue money damages under Count I of the Complaint. It can, however, pursue money damages against Melcher under Counts II-VI.

### V. Melcher's Request for Attorneys' Fees Should be Denied.

Melcher's perfunctory request for his costs and attorneys' fees in defending this action pursuant to Tex. Bus. & Com. Code § 15.51(c) should be denied. *See* Dfs. Br. at ¶ 24.

7

"Generally, a party may not recover attorney[s'] fees unless authorized by statute or contract." *Ginn v. NCI Bldg. Sys.*, 472 S.W.3d 802, 824 (Tex. App. 2015).

> Under Texas Business & Commerce Code § 15.51(c), a court <u>may</u> award attorneys' fees to an employee who is sued by a former employer under a covenant not to compete or non-solicitation agreement if the employee (1) 'establishes that the [employer] <u>knew at the time of execution</u> of the agreement that the covenant did not contain limitations as to <u>time, geographical area, and scope of activity</u> to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the [employer],' and (2) 'the [employer] <u>sought to enforce the covenant to a greater extent than was necessary to protect the goodwill or other business interest</u> of the [employer].'"

*GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 329 (5th Cir. 2018) (quoting Tex. Bus. & Com. Code § 15.51(c)) (citing *Sentinel Integrity Sols., Inc. v. Mistras Grp., Inc.*, 414 S.W.3d 911, 924 (Tex. App. 2013)) (alterations in original and emphasis added). Melcher bears the burden of proof of demonstrating both requirements. *Id.*

Melcher's argument as to why he is entitled to an award of costs and attorneys' fees under section 15.51(c) spans just one sentence. *See* Dfs Br. at ¶ 24 ("As is evidenced by its concession in the *Ness* case, Organogenesis knew that the [Agreement] was geographically overbroad, yet Organogenesis brought this suit to enforce it anyway."). Melcher adduces no evidence reflecting Organogenesis' knowledge at the time of the Agreement's execution. Nor does he advance any argument as to how the non-competition provision's time and scope of activity are unreasonable under Texas law; how Organogenesis has sought to enforce the provision to a greater extent than necessary to protect its business interests; or why equity under these circumstances justifies cost-shifting.

To be sure, Melcher points to a 2016 case from the U.S. District Court for the District of Nevada as "evidence" that Organogenesis knew the Agreement's geographic scope was

unenforceable under Texas law when the parties executed the Agreement in 2014. *See* Dfs Br. at ¶ 24 (citing *Organogenesis, Inc. v. Ness*, 2016 U.S. Dist. LEXIS 68028 (D. Nev. May 23, 2016)). In *Ness*, Organogenesis sought a preliminary injunction in May 2016 against a former Nevada-based Tissue Regeneration Specialist who resigned from the Company and joined one of the Company's competitors. *Ness*, 2016 U.S. Dist. LEXIS 68028, at \*\*1-4. Applying Massachusetts law, the Court concluded, and Organogenesis conceded, that the geographical scope of the non-competition provision was too broad. *Id.* at \*\*8-12. The Court reformed the geographical scope of the provision and enjoined the defendant employee from competing against the Company in her former sales territory. *Id.* at \*12.

*Ness*, a 2016 case involving a Nevada-based former employee applying Massachusetts law, has no bearing on Organogenesis' knowledge that the Agreement's non-competition provision was unenforceable under Texas law upon the Agreement's execution in 2014. Because there is no competent evidence of Organogenesis' knowledge in 2014, Melcher's attorneys' fee request fails. *See GE Betz*, 885 F.3d at 328-32 (reversing attorneys' fee award issued under Tex. Bus. & Com. Code § 15.51(c) where employee proffered no evidence that employer knew at the time of the agreement's execution that non-solicitation provision was unenforceable under Texas law); *SafeWorks, LLC v. Max Access, Inc.*, 2009 U.S. Dist. LEXIS 29268, at \*\*22-25 (S.D. Tex. Apr. 8, 2009) (denying attorneys' fee award under Tex. Bus. & Com. Code § 15.51(c) where employee proffered no evidence that employer knew non-solicitation provision was unenforceable under Texas law at the time of the agreement's execution).

But Melcher's attorneys' fee request fails for several other reasons. The statute requires "knowledge that the restraint is overbroad <u>in all three respects (time, geographic limitations, and scope)</u>." *Weber Aircraft, L.L.C. v. Krishnamurthy*, 2014 U.S. Dist. LEXIS 182850, at \*10 (E.D.

9

Tex. Dec. 11, 2014) (citing *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 69-70 (Tex. 2008)). Melcher has made no argument as to the non-competition provision's time and scope of activity being unenforceable under Texas law, let alone Organogenesis' knowledge of the same at the time of the Agreement's execution.

Nor has Melcher made any showing that Organogenesis sought to enforce the Agreement "to a greater extent than was necessary to protect the goodwill or other business interest" of the Company. *See* Tex. Bus. & Com. Code § 15.51(c). Organogenesis was compelled to initiate this lawsuit following Melcher "moonlighting" for the Company's direct competitors in the West Texas Territory for a period of two years, and perhaps longer. Nowhere in the Complaint or in this docket is there any indication that Organogenesis has attempted to enforce the non-competition provision outside of the West Texas Territory. To state it differently, Organogenesis has not pursued injunctive relief or money damages for Melcher's competing outside the West Texas Territory.

Finally, even if Melcher has satisfied the statue's prerequisites (he has not), the statute provides that the Court "may" enter an award of attorneys' fees, not that it is required to do so. *See id.* Melcher has made no effort to show why the Court should enter the draconian remedy of cost-shifting. It was Melcher's inequitable conduct that caused this lawsuit, not Organogenesis'. The Court should treat Melcher's attorneys' fees request with the same attention Melcher did, *i.e.*, as an afterthought.

## CONCLUSION

For the reasons set forth herein, Organogenesis respectfully requests that the Court deny the Motion; reform the geographical scope of the Agreement's non-competition provision to the West Texas Territory; reject Melcher's request for an award of costs and attorneys' fees in

10

defending against this action; and grant such other and further relief as the Court deems just and proper.

Dated: October 30, 2024                               Respectfully submitted by,

**ORGANOGENESIS INC.**

By and through its attorneys,

/s/ Michael Rosen
Michael Rosen (*pro hac vice*)
Leah S. Rizkallah (*pro hac vice*)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
mrosen@foleyhoag.com
lrizkallah@foleyhoag.com
Tel: 617-832-1000
Fax: 617-832-7000

Richard Biggs
Mullin Hoard & Brown, LLP
500 S Taylor, Suite 800, LB 213
Amarillo, TX 79101
rbiggs@mhba.com
Tel: 806-372-5050
Fax: 806-372-5086

**CERTIFICATE OF SERVICE**

  I hereby certify that, on the 30th day of October 2024, the foregoing document was electronically transmitted to the Clerk of the Court for filing via the Court's ECF System, and service of Notice of Electronic Filing was made to the ECF registrants shown below:

YOUNG FIRM, PC
Jeremi K. Young, TX SBN 24013793
905 S. Fillmore, Suite 101
Amarillo, Texas 79101
jyoung@youngfirm.com

                /s/ Michael Rosen
                Michael Rosen